**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TANWEER AHMED MOHAMED HUSSAIN PARKAR, *et al.*,<br><br>Defendants. | Case No. 25-cr-74 (JMC) |

**MEMORANDUM OPINION AND ORDER**

The United States charged Tanweer Ahmed Mohamed Hussain Parkar with a single count of attempting to violate 21 U.S.C. § 842(a)(11). ECF 93 at 1. Section 842 authorizes the imposition of civil penalties against anyone who "distribute[s] a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical . . . with reckless disregard for the illegal uses to which such a laboratory supply will be put." 21 U.S.C. § 842(a)(11), (c)(1)(A). Congress provided that the conduct proscribed by § 842(a)(11) can be upgraded from a civil violation to a misdemeanor, but only if a prosecutor alleges (and a factfinder concludes) that "the violation was committed knowingly." 21 U.S.C. § 842(c)(2)(A).

The Government and Parkar disagree about how to interpret that phrase. The Government asserts that the "knowingly" modifier applies only to the act of distribution. Under the Government's reading, a person who "[*knowingly*] distribute[s] a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical" is guilty of a misdemeanor, so long as they acted "with *reckless disregard* for the illegal uses to which such a laboratory supply w[ould] be put." 21 U.S.C. § 842(a)(11) (emphasis

added); *see* ECF 98 at 1. Parkar, by contrast, contends that the "knowingly" modifier applies to *all* elements of § 842(a)(11)—that is, under Parkar's reading, a person can only be guilty of a misdemeanor if they "[*knowingly*] distribute a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical," and they acted "with [*knowledge* of] the illegal uses to which such a laboratory supply w[ould] be put." 21 U.S.C. § 842(a)(11); *see* ECF 99 at 1.

The information against Parkar alleges that he "knowingly" attempted to distribute a laboratory supply with "reckless disregard" for the illegal uses to which the laboratory supply would be put. ECF 93 at 1. Thus, if the Government's reading of the statute is correct, then the information against Parkar states a misdemeanor charge. But if Parkar's reading is correct, then the information fails to charge an essential element of the criminal offense—namely, that Parkar had knowledge of the illegal uses to which the supply would be put—and is therefore defective. *See United States v. Jabr*, 4 F.4th 97, 103 (D.C. Cir. 2021) ("A charging document that does not charge all elements of the offense is . . . defective."). The Parties filed briefs in support of their respective interpretations of the statute. *See* ECF 97; ECF 98; ECF 99; ECF 100. The Court, with the Parties' consent, construes the briefing as Parkar bringing a motion to dismiss the information, which the Government opposes. *See* Oct. 28, 2026, Min. Entry; *see also United States v. Carey*, 816 F. Supp. 3d 129, 134 (D.D.C. 2026) ("Prior to trial, a defendant may move to dismiss an information . . . on the basis that there is a 'defect in the . . . information,' including a 'failure to state an offense.'" (quoting Fed. R. Crim. P. 12(b)(3)(B)(v)).

The Court agrees with Parkar's reading of the statute and concludes that the information fails to state an offense. The Court will therefore order that the information be dismissed.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to

## I. FACTUAL BACKGROUND

The Parties agree on the facts. *See* ECF 97 at 1–2; ECF 98 at 1. The Court therefore provides a brief recitation of relevant details for context purposes only.

Parkar worked for Vasudha Pharma Chem Limited (Vasudha), a drug and chemical manufacturing company. *See* ECF 89-2 at 10. As relevant here, Vasudha sells a chemical known as N-BOC-4-piperidone (N-BOC-4P). *Id.* at 12. N-BOC-4P can be used to manufacture fentanyl. *See id.* at 11. Consequently, transactions involving N-BOC-4P are regulated by U.S. law. *See id.* at 11–12.

In 2023, an undercover agent with the Drug Enforcement Agency established contact with Vasudha as part of a sting operation. ECF 89-2 at 15. The undercover agent represented that they were a "chemical distributor who contracts with research chem companies." *Id.* The agent established a business relationship with Vasudha and began making purchases of N-BOC-4P. *See id.*

Over the course of that business relationship, the undercover agent gave suggestions to Vasudha employees—including Parkar—that the N-BOC-4P Vasudha was shipping was being used to make fentanyl. *See* ECF 89-2 at 19–21. Despite these suggestions, Parkar participated in an attempt to sell a large shipment of N-BOC-4P to the undercover agent. *Id.* at 22–24. Parkar made this attempt with reckless disregard for the purchaser's intended use of the N-BOC-4P. *See* ECF 97 at 1 (admitting that Parkar "acted with reckless disregard for the buyer's intended use of the laboratory supply"). But it is undisputed that Parkar did not have knowledge that the purchaser intended to use the N-BOC-4P for illegal purposes. *See id.* at 1–2 (representing that "the

documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

government agrees" that "Mr. Parkar did not know that the buyer intended to . . . put the laboratory supply to an illegal use"); *accord* ECF 93 at 1.

In March 2025, Parkar, two other Vasudha employees, and Vasudha itself were indicted and charged with crimes related to the possession or distribution of controlled substances. ECF 5. Vasudha and one of Parkar's co-defendants were dismissed from the case. *See* Sep. 12, 2025, Min. Order; ECF 91. The other charged employee has not appeared in this matter and is reported to be outside of the United States. *See* ECF 97 at 2 n.1. Parkar is thus the only defendant who remains an active part of this case.

In 2026, the Government filed a superseding information against Parkar. ECF 93. That information charges Parkar with one count of "knowingly attempt[ing] to distribute [N-BOC-4P] to a person who used, or attempted to use, that laboratory supply to manufacture [fentanyl], . . . with reckless disregard for the illegal uses to which such a laboratory supply would be put." *Id.* at 1. The information does not allege that Parkar had any knowledge that the N-BOC-4P he attempted to sell would be used for an illegal purpose. *See id.* Parkar asserts that the information therefore fails to state a criminal offense; the Government disagrees. *See* ECF 97 at 1–2; ECF 98 at 1. Parkar moved to dismiss the information as defective. *See* Oct. 28, 2026, Min. Entry.

## II. LEGAL STANDARD

The proper interpretation of a statute is a question of law. *United States v. Cook*, 594 F.3d 883, 886 (D.C. Cir. 2010). "In all cases of statutory interpretation, [a court] start[s] with the controlling statute's text." *Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 894 (D.C. Cir. 2021). If the plain language of the statute's text is unambiguous, then a court should apply that unambiguous meaning and inquire no further. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018). But in cases where "the text alone is insufficient to end the inquiry, [a

court] may turn to other customary statutory interpretations tools, including structure, purpose, and legislative history." *Genus Med. Techs. LLC v. U.S. Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021).

## III. ANALYSIS

The question presented to the Court—whether the "knowingly" modifier from 21 U.S.C. § 842(c)(2)(A) applies to all elements of the underlying civil violation defined by 21 U.S.C. § 842(a)(11)—seems to be a matter of first impression. The Court has found only a small handful of cases that cite to either § 842(a)(11) or § 842(c)(2)(A), and none of those cases analyze how the latter subsection modifies the elements of the former. And although the Government argues that there are two out-of-circuit cases that have "weighed in" on the interpretation of § 842(a)(11), the Court has reviewed those cases and finds them to be of little use here.[2] *See* ECF 98 at 12–13.

The Court therefore aims to uncover the meaning of the statute by examining the statute's plain text and resorting to traditional interpretive tools. And that examination leads the Court to conclude that Parkar's interpretation is correct: To convert the conduct prohibited by § 842(a)(11) into a misdemeanor offense, all elements of the violation must be "knowing." The *mens rea* requirement from § 842(c)(2)(A) therefore supplants the "reckless disregard" language that applies for civil violations. As a result, the information in this case is defective because it fails to state a criminal offense.

[2] The statutory interpretation question at issue here relates to the interplay between § 842(a)(11) and § 842(c)(2)(A). Neither case cited by the Government touches on that issue. *See generally United States v. Nguyen*, No. 99-cr-210, 1999 WL 1220761 (E.D. La. Dec. 15, 1999); *United States v. El-Hajjaoui*, 227 F.3d 1274 (10th Cir. 2000). *El-Hajjaoui* quotes language from § 842(a)(11) without opining on its interpretation at all. *See* 227 F.3d at 1277–78. And while *Nguyen* indicates that an "element[]" of a § 842(a)(11) violation is "reckless disregard for the illegal uses to which . . . a laboratory supply w[ould] be put," the *Nguyen* court, too, lacks any discussion of the effect that § 842(c)(2)(A)'s "knowingly" modifier has on that element, if any. *See* 1999 WL 1220761, at *4–7. In any case, the Court is not bound by either opinion.

**A. Parkar's Interpretation Is Correct Under the Statute's Plain Meaning.**

The Court begins with the text, as it must. *See Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 894 (D.C. Cir. 2021). The text at issue here provides:

> "It shall be unlawful for any person . . . to distribute a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical, in violation of this subchapter or subchapter II, with reckless disregard for the illegal uses to which such a laboratory supply will be put[.]" 21 U.S.C. § 842(a)(11).[3]
>
> "If a violation of this section is prosecuted by an information or indictment which alleges that the violation was committed knowingly and the trier of fact specifically finds that the violation was so committed, such person shall, except as otherwise provided in subparagraph (B) or (D) of this paragraph, be sentenced to imprisonment of not more than one year or a fine under Title 18, or both." 21 U.S.C. § 842(c)(2)(A).

For ease of reference, the Court will refer to the first provision (§ 842(a)(11)) as the "Underlying Violation" provision, and the second provision (§ 842(c)(2)(A)) as the "Knowingly Modifier" provision.

Look first to the Underlying Violation provision. The text of that provision creates a civil violation that has two distinct elements:

1) The person must "distribute a laboratory supply" which is received by someone who "uses, or attempts to use, that laboratory supply to manufacture a controlled substance or listed chemical"; and
2) In distributing the laboratory supply, the person must have acted "with reckless disregard for the illegal uses to which [the] laboratory supply [was] put."

21 U.S.C. § 842(a)(11). Like many violations that exist at law—and as any first-year legal student could recognize—the two elements of the Underlying Violation provision are, respectively, a "wrongful act" element and a "mental state" element. *Cf. Actus Reus*, Black's Law Dictionary (12th ed. 2024); *Mens Rea*, Black's Law Dictionary (12th ed. 2024). When a person distributes a

[3] A person who violates this provision is liable, as a default, for civil penalties only. *See* 21 U.S.C. § 842(c)(1)(A).

laboratory supply to someone who uses that supply to manufacture a controlled substance, they have undertaken the first element, i.e., the wrongful act. 21 U.S.C. § 842(a)(11). And if the person distributed that supply with "reckless disregard" for the illegal uses to which the laboratory supply would be put, then they possessed the requisite mental state. *Id.* As the text makes clear—and as a matter of first principles—for the government to prove an infraction of the Underlying Violation, the government must prove that *both* elements are satisfied. *See* 21 U.S.C. § 842(a)(11) (to be "unlawful," distribution must be undertaken "*with*" reckless disregard (emphasis added)); *cf. United States v. Apfelbaum*, 445 U.S. 115, 131 (1980) ("In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur.").

That, of course, makes good sense. If Congress had drafted the statute *not* to include a mental state element—such that the very act of "distribut[ing] a laboratory supply" to someone who uses that supply "to manufacture a controlled substance" was itself a civil violation—Congress would have created a curiously severe type of strict liability. Take, for instance, the chemical acetone. Acetone is a familiar product—it is used in, among other things, nail polish remover, glue, and cleaning agents.[4] One could walk into their local household goods store and buy acetone any time with presumably no questions asked.[5] But acetone also qualifies as a "laboratory supply" under the Underlying Violation provision. *See* 21 U.S.C. § 842(a) ("As used in paragraph (11), the term 'laboratory supply' means a listed chemical or any chemical, substance, or item on a special surveillance list published by the Attorney General . . . ."); Special Surveillance List of Chemicals, Products, Materials and Equipment Used in the Manufacture of

[4] *See* William E. Luttrell & Austin L. LaGrow, *Acetone*, 21 J. Chem. Health & Safety 29, 29–31 (2014); *see also* Sheikh Montasir Mahbub et al., *Ultra-short Pulse: A Comprehensive Way of Sensing Pure Solvents Through Hollow Core Photonic Crystal Fiber Sensor*, 156 Optical Materials 116028 (2024) ("Acetone is a common ingredient in household items like nail polish remover, paint strippers, adhesives, and household cleaners[.]").

[5] *See, e.g.*, Target, https://www.target.com/s?searchTerm=acetone (last visited Nov. 9, 2026); Walmart, https://www.walmart.com/search?q=acetone (last visited Nov. 9, 2026).

Controlled Substances and Listed Chemicals, 88 Fed. Reg. 73044, 73045 (Oct. 24, 2023) (noting that special surveillance list includes "all listed chemicals as specified in 21 CFR 1310.02(a) or (b)"); 21 C.F.R. § 1310.02(b) (listing acetone). That means that if the wrongful act element of the Underlying Violation, standing alone, constituted a civil "violation," a local retailer could "violate" the law simply by selling acetone to someone who then used the acetone to manufacture a controlled substance, even if the retailer was operating under the reasonable impression that the purchaser was buying acetone only to remove their nail polish. It is thus unsurprising that the wrongful act element is not, standing alone, a violation of law; the wrongful act is only unlawful when it is accompanied by the requisite mental state. 21 U.S.C. § 842(a)(11); *cf. Liparota v. United States*, 471 U.S. 419, 426 (1985) (noting that courts disfavor constructions of statutes that "criminalize a broad range of apparently innocent conduct"). Text and common sense thus cut in the same direction.

All of that is precursor, though, because the task here is not to identify what the elements of the Underlying Violation are; it is to identify what the elements of the misdemeanor provision are. That precursor is necessary, though: The Knowingly Modifier provision says that a "*violation*" of the civil provision is a misdemeanor only if a prosecutor alleges—and a factfinder concludes—that the "*violation* was committed knowingly." 21 U.S.C. § 842(c)(2)(A) (emphasis added). The word "knowingly" modifies the word "violation." *Id.* The operative question, then, is what constitutes a *violation* of the civil provision, for that is the thing that must be done knowingly.

Plain text again provides the answer. The word "violation" refers to the commission of unlawful activity. *See Violation*, Black's Law Dictionary (12th ed. 2024) (defining "violation" as "an infraction or breach of the law"); *see also Violation*, Oxford English Dictionary, https://www.oed.com/dictionary/violation_n?tab=meaning_and_use#15619100 (last visited Nov.

9, 2026) (similar).[6] And the commission of unlawful activity does not happen unless both textual elements of the Underlying Violation provision are present. *See supra*. Consequently, to "knowingly" commit a "violation" of the Underlying Violation, a person must not only "know[]" that they are distributing a laboratory supply, but must also "know[]" of "the illegal uses to which [the] laboratory supply will be put." If a person knows they are distributing a laboratory supply but does *not* know of the future illegal uses of that supply, then the "violation" was, by textual necessity, not committed knowingly. And a non-knowing violation is not a misdemeanor under the relevant law. *See* 21 U.S.C. § 842(c)(2)(A).

This reading gives effect to the particular words Congress chose when it passed the statute. Congress said that a misdemeanor occurs when a "*violation* [is] committed knowingly." 21 U.S.C. § 842(c)(2)(A) (emphasis added). Congress could have said that a misdemeanor occurs when an "action" is taken knowingly, or when a "distribution of laboratory supplies" is made knowingly, or anything similar that refers only to the wrongful act element of the Underlying Violation. But Congress instead chose to use a word that implicates both the wrongful act *and* mental state elements of the Underlying Violation. Both elements must therefore come with knowledge attached for a misdemeanor to exist. The Court has no power to read the Knowingly Modifier provision any other way. *See McNeil v. United States*, 508 U.S. 106, 111 (1993) ("[Courts] are not free to rewrite the statutory text."); *see also Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) ("The cardinal principle of interpretation [is] that courts must give effect, if possible, to every clause and word of a statute.").

---

[6] Courts interpret statutes according to their ordinary meaning, unless words are otherwise defined, and dictionary definitions are a key way to understand ordinary meaning. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433–34 (2019) (consulting dictionaries to discern a term's "ordinary, contemporary, common meaning"); *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227–28 (2014) (same).

The correct reading of the statute is therefore the one Parkar advances. Because the plain language of the statute is unambiguous, reference to any extratextual sources is unnecessary.

**B. Parkar's Interpretation Is Consistent with Interpretive Presumptions, and the Government's Interpretation Is Not.**

Although the Court concludes that the plain text is capable of only one meaning, the Court notes that usual interpretive presumptions also militate in Parkar's favor. First, consider the presumption in favor of scienter. The presumption in favor of scienter is "a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v. United States*, 588 U.S. 225, 229 (2019). Under that presumption, when a statute includes a "general scienter provision" that "prescribes the kind of culpability that is sufficient for the commission of an offense" writ large, i.e., "without distinguishing among the material elements" of the offense, then the generalized *mens rea* term is read to apply to "all . . . material elements" of the offense. *Id.* (quoting Model Penal Code § 2.02(4) (A.L.I. 1985)); *see also Ruan v. United States*, 597 U.S. 450, 458 (2022).

By requiring simply that a "violation [be] committed knowingly," 21 U.S.C. § 842(c)(2)(A), the Knowingly Modifier provision "prescribes the kind of culpability that is sufficient for the commission of an offense . . . without distinguishing among the material elements thereof," *Rehaif*, 588 U.S. at 229. It is therefore the type of general scienter provision that should "apply to *all* the material elements of the offense." *Id.* (emphasis added). Accordingly, applying the presumption in favor of scienter, § 842(c)(2)(A)'s "knowingly" *mens rea* should apply to each element of the criminal offense it creates. That is consistent with Parkar's interpretation.

The Government asserts that the presumption does not apply here because Congress has *already* established a *mens rea* for the second element of the offense—namely, "reckless

disregard." ECF 98 at 11, 16. But "reckless disregard" is the scienter for the civil violation. *See* 21 U.S.C. § 842(a)(11). The misdemeanor (as created through the Knowingly Modifier) is a different provision of law. There is therefore no reason why the mental state required for the civil violation should be identical to the *mens rea* required for the criminal offense; Congress created two *different* offenses—one civil and one criminal—and there is no principle the Court is aware of which suggests that Congress is bound to use the same mental state for both just because the criminal offense references the civil violation. The Government's argument seems, therefore, to presuppose the conclusion.

Of further note, the Government's reading, if adopted, would seem to make the Underlying Violation and the misdemeanor offense functionally identical. If the Court adopted the Government's view, it would be a civil violation to "distribute a laboratory supply" "with reckless disregard" for the potential illegal use of that supply, but a misdemeanor to "*knowingly* distribute a laboratory supply" "with reckless disregard" for such illegal use. *See* ECF 98 at 1–2. It is not clear what the point of that singular addition would be, for one wonders how a person could distribute a laboratory supply *un*knowingly.[7] With effort, one could perhaps come up with some far-fetched hypotheticals that might fit the bill (say, for instance, that following a chemist's explanation to her husband that some unidentified boxes in their home may contain chemicals that could be used to manufacture controlled substances, the husband starts selling his wife's boxes without knowing precisely what they contain). But it is doubtful that Congress meant to create a

[7] Further still, there's no clear way that a person could lack knowledge that they were distributing a laboratory supply while also having "reckless disregard" for the illegal uses of that laboratory supply. To be able to "*dis*regard" the "illegal uses" of a laboratory supply, a person must necessarily have had the capacity to *regard* those illegal uses in the first place, and then not done so. *See Disregard*, Oxford English Dictionary, https://www.oed.com/dictionary/disregard_v?tab=meaning_and_use#6456140 (last visited Nov. 9, 2026); *see also United States v. Borden*, 593 U.S. 420, 427 (2021) ("In the most common formulation," a person behaves recklessly when they "consciously disregard[] a substantial and unjustifiable risk attached to [their] conduct, in gross deviation from accepted standards."). A person who does not know that they are distributing laboratory supplies is thus presumably incapable of "disregarding" concerns related to those supplies.

civil violation that would apply to this sliver of peculiar conduct, particularly since, as the Government insists, the legislative history of Section 842(a)(11) indicates that Congress's "legislative intent" was to create a "flexible penalty structure" that aimed to penalize "chemical suppliers who sell chemicals to illegal meth labs." ECF 98 at 18; *cf. Liparota*, 417 U.S. at 426. It seems the case, then, that the civil violation provision is coterminous with the Government's reading of the misdemeanor provision. That congruence would cast doubt on the Government's interpretation, for it would imply that the Knowingly Modifier is functionally surplusage.[8] *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024) ("Proper respect for Congress cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are superfluous or void of significance.").

Based on the foregoing, the Court concludes that, to state a misdemeanor offense under 21 U.S.C. § 842(a)(11) and (c)(2)(A), a charging document must allege that the defendant acted with knowledge of the illegal uses to which the distributed laboratory supply would be put. The superseding information here makes no such allegation and is thus defective. Because the information is defective, the Court **GRANTS** Parkar's motion and **ORDERS** that the information against him, ECF 93, is **DISMISSED.**

---

[8] The Government makes a similar type of argument against Parkar's interpretation in its opposition. ECF 98 at 15. There, the Government notes that Congress passed multiple other criminal provisions that penalize as *felonies* the same sort of conduct that, under Parkar's reading of § 842(c)(2)(A), would give rise only to a misdemeanor. *See id.*; *id.* at 7 (first citing 21 U.S.C. § 841(c)(2); then citing *id.* § 843(a)(7); then citing *id.* § 959(a); and then citing *id.* § 959(b)). The Government argues that Parkar's interpretation of the statute is therefore "illogical," since it would prescribe two different penalties for what is functionally one crime. *See* ECF 98 at 15. But the Court is unconvinced, because the felony statutes the Government cites do not obviously have a one-to-one overlap with the misdemeanor at issue here. For instance, most of the Government's cited statutes concern distribution of "listed chemicals" or "controlled substances," both of which are narrower categories than the "laboratory supplies" at issue in § 842(a)(11). *See* 21 U.S.C. § 842(a) (defining "laboratory supply"). *Compare* 21 U.S.C. § 842(c)(2), *and id.* § 959(a), *and id.* § 959(b), *with id.* § 842(a)(11). And in any event, even if Congress did write separate statutes that could, in some instances, result in the same conduct being criminalized as a felony and a misdemeanor, that would not inherently be "illogical." *See* ECF 99 at 8 n.2 (citing examples of similar schemes).

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: November 9, 2026